**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DAWN APLEY,**

            **Plaintiff,**         **CIVIL ACTION NO. 11-cv-15469**

    **vs.**

                          **DISTRICT JUDGE GERALD E. ROSEN**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

            **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dawn Apley seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Remand Pursuant to Sentence Four (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 13). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.      RECOMMENDATION:**

This Court recommends that Plaintiff's Motion to Remand (docket no. 11) be GRANTED IN PART and DENIED IN PART. Because the Court recommends granting Plaintiff's Motion in part, Defendant's Motion for Summary Judgment (docket no. 13) should be DENIED.

**II.     PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits with a protective filing date of March 3, 2010, alleging that she had been disabled since November 1, 2007,[1] due to multiple sclerosis (MS), migraine headaches, and torn cartilage in her knee.  (TR 62.)  The Social Security Administration denied benefits.  (TR 20.)  Plaintiff requested a *de novo* hearing, which was held on August 8, 2011, before Administrative Law Judge (ALJ) Myriam C. Fernandez Rice, who subsequently found that the claimant was not entitled to Disability Insurance Benefits because Plaintiff was capable of performing other work in the economy.  (TR 26-27.)  The Appeals Council declined to review the ALJ's decision (TR 1), and Plaintiff commenced the instant action for judicial review.  Plaintiff filed her Motion for Remand, and Defendant filed his Motion for Summary Judgment.

## III.   PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff was 43 years old at the time of the administrative hearing and 39 years old at the time of alleged onset.  (TR 62.)  Plaintiff has past work experience as a gas-station cashier and as a laboratory technician.  (TR 54.)  Plaintiff testified that she hasn't worked since November 2007 when problems with her arms and hands caused her to start dropping things.  (TR 42.)  She testified that on a typical day, she will take care of her family's pets, get her daughter ready for school, help her (home-schooled) son with his school work, make up chore sheets for her kids, take several naps, do some housework, and make dinner.  (TR 43-44.)  Plaintiff testified that she needs help from her family with the housework and with cooking, and although she can drive, she chooses not to because

---

[1]Plaintiff originally alleged an onset date of November 1, 2007, but later amended that date to October 29, 2010.  (TR 19, 58, 238.)

2

she has trouble focusing.  (TR 44, 52.)  At the time of her hearing, Plaintiff received cash assistance from the State of Michigan.  (TR 40.)  Plaintiff lives with her two sons (23 and 17) and her daughter (12).  (TR 40.)

Plaintiff testified that her symptoms started sometime in 2007 when she began to feel pain in her arms and had difficulty holding on to things.  (*See* TR 42.)  She testified that the trouble with her arms and hands has continued, and she sometimes has trouble doing the laundry, making dinner, or even pouring a glass of milk.  (TR 44-45.)  Plaintiff testified that the pain comes and goes, and when she is not in pain, she can lift a gallon of milk or even a laundry basket.  (TR 45.)  She testified that the pain comes almost every day.  (TR. 45.)

Additionally, Plaintiff testified that she has painful cramps in her legs that require her to sit after standing for 10-15 minutes.  (TR 46.)  At the hearing, Plaintiff was wearing a brace on her left leg, which she indicated was prescribed by her doctor when her left foot began to turn inward.  (TR 47.)  Plaintiff testified that her doctor instructed her to wear it only when she was going to be "doing a considerable amount of walking."  (TR 47.)  Plaintiff also testified that she can only walk about the distance of her driveway before she needs to sit and rest; she cannot walk a city block.  (TR 47.)

Plaintiff's chief complaint, however, was with her general fatigue.  (TR 48.)  She claimed that she gets tired very quickly and that when she gets fatigued, "[she] can't think straight" and "can't focus."  (TR 48.)  She testified that she has periods of instability where she bumps into walls.  (TR 48.)  Plaintiff also testified that she is dealing with depression (TR 48), she has vision, concentration, and memory problems (TR 50), and she has two or three migraine headaches each week (TR 51).

Plaintiff testified that she speaks with a church pastor and takes Cymbalta to deal with her depression.  (TR 48.)  She also takes Lyrica for her Multiple Sclerosis two or three times a day; she

3

could not remember her dosage instructions.  (TR 49.)  To deal with her balance problems, Plaintiff

has stabilizer bars installed in her hallway and bathroom.  (TR. 49.)  She testified that she takes long

naps each day to deal with her balance and fatigue problems as well as her migraines.  (TR 52-53.)

    **B.**    **Medical Record**[2]

In 2007, Plaintiff began to have problems with her right knee.  (TR. 246.)  In November

2007, she had arthroscopic surgery to repair a medial meniscal tear.  (TR 249.)  Sometime between

November 2007 and October 2008, Plaintiff presented to her treating physician, Dr. Jim

VanHoutteghem, with weakness and pain in her arms.  (*See* TR 277.)  Dr. VanHoutteghem referred

Plaintiff to Dr. Steven Beall, M.D., a board certified neurologist, who diagnosed Plaintiff with

myelopathic quadriparesis.  (TR. 278.)  He prescribed several medications, and in a follow-up

appointment a week later, Plaintiff reported that the pain in her arms had decreased but had not been

eliminated.  (TR 275.)  Dr. Beall adjusted her medication.  (TR. 276.)

On November 21, 2008, Plaintiff reported additional problems with cramping and pain

lasting longer than 24 hours.  (TR. 273.)  At this time, Dr. Beall noted that a recent MRI "showed

lesions that are strongly suggestive for multiple sclerosis," but "[a]t this point in time she lacks the

space and time component."  (TR 274.)  Plaintiff's problems appear to have continued through the

beginning of 2009, and on August 20, 2009, Dr. Beall ordered a spinal tap with MS protocol to test

for MS.  (TR 270.)  The next day, Dr. Beall saw Plaintiff again, and his notes indicate that she was

experiencing additional, minor problems with gait and station and motor function.  (TR. 269.)  He

also opined that "[i]t is possible that she has multiple sclerosis, however, at this point in time she

---

[2]Plaintiff's documented medical history is based on communications between her doctors at Michigan Neurology Associates, P.C., and her physician, Dr. Jim VanHoutteghem.  The letters sent to Dr. VanHoutteghem are supported by other evidence in the record.

does not fit the space component.  She now fits the time component fro (sic) this disease." (TR 269.)
He also put her on a new medication: Betaseron.  (TR 269.)

On October 16, 2009, Plaintiff reported to Dr. Beall that she still had some weakness but her
problems with gait and station and motor function had improved.  (TR. 267.)  Additionally, her
spinal tap showed normal results; Dr. Beall noted that "[s]he [was] doing very well on Betaseron,"
and "[a]t this point in time she does not fill the criteria for multiple sclerosis although it is possible."
(TR 267.)  On November 13, 2009, Plaintiff reported to Dr. Beall with a deteriorating condition; she
had some blurred vision in her right eye, she had some motor weakness, and she had an increase in
two brain lesions along with elevated liver enzymes.  (TR. 266.)  Dr. Beall ordered Plaintiff to stop
taking her Bataseron until her liver levels could be rechecked, and he noted that "[s]he now fits
criteria for multiple sclerosis using McDonald's criteria."  (TR. 266.)

On January 28, 2010, Dr. Beall reported that Plaintiff had weakness in her arms on a daily
basis.  (TR 265.)  Her other symptoms had returned to normal, as had her liver enzyme levels.  (TR
265.)  Dr. Beall noted that her quadreparesis had returned while she was off of Betaseron; he
prescribed her a quarter dose for one month and a half dose thereafter.  (TR 265.)  On March 25,
2010, Dr. Beall indicated that Plaintiff had "done extremely well on the Betaseron."  (TR 264.)
While she had experienced some problems with using her jaw, swallowing and with dizziness, her
other symptoms had subsided.  (TR 264.)  On June 4, 2010, Plaintiff reported to Dr. Beall with
severe fatigue but otherwise stable functions.  (TR 301.)  On August 20, 2010, Plaintiff reported to
Dr. Beall with continuing fatigue and tingling in her hands.  (TR. 300.)

On January 7, 2011, Plaintiff reported that she was beginning to have some balance issues.
(TR 308.)  She also told Dr. Beall that her insurance would no longer pay for the Betaseron.  (TR.
308.)  At this time she was diagnosed with "[c]linically definite multiple sclerosis."  (TR 308.)  On

April 15, 2011, Plaintiff indicated to Dr. Beall that she had pain and cramping in her left arm every day and that she had "a choking episode lasting 3 days for solids and liquids." (TR 306.) She also reported episodes of bowel incontinence and told Dr. Beall that he husband had filed for divorce. (TR. 306.) Dr. Beall reported that Plaintiff was "at a high risk for depression." (TR 306.)

On May 27, 2011, Plaintiff was examined by Dr. Thomas Giancarlo, D.O. Dr. Giancarlo indicated that Plaintiff had been off her medications because her insurance would not cover them. He also noted that she was experiencing left-side weakness, headaches, and several other new symptoms, including a slight inward turn of her left foot. (TR 309.) Dr. Giancarlo diagnosed Plaintiff with MS, left foot drop, cervical myostis with cervicogenic headaches, and depression. (TR.309.)

### C.    The Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's prior work experience was light and unskilled as well as light and skilled. (TR 55.) The ALJ asked the VE to consider an individual who would need to sit and stand alternatively at will; who could not constantly handle objects with her left hand; could do no constant overhead reaching with her left shoulder; would need to avoid even moderate exposure to extreme cold, wetness, or humidity; would need to avoid moderate exposure to excessive vibrations and all exposure to unprotected heights; could not climb ladders, ropes or scaffolds; and would be limited to simple, routine, repetitive work. (TR 55.) The VE testified that this individual would not be able to handle Plaintiff's past work, but he indicated that there were jobs in both the "light" and "sedentary" levels that the individual could perform. (TR 56.) The VE testified that this individual could work in assembling, as a packer, as an inspector, or as a monitor. (TR 56-57.) The ALJ asked the VE to add a limitation whereby the individual would need unscheduled breaks throughout the work day due to fatigue. (TR 57-58.) The VE testified that there

would ne no jobs in the economy for someone with such a set of limitations. (TR 58.)

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2012; had not engaged in substantial gainful activity since November 1, 2007; and suffered from severe MS, migraines, torn cartilage in her knee, and depression; she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 21.)  The ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not totally credible, and although Plaintiff could not perform her past work, she had the ability to perform a limited range of sedentary work, and there were jobs that existed in significant numbers in the economy that Plaintiff could perform.  (TR 23-27.)  Therefore, she was not suffering from a disability under the Social Security Act at any time from November 1, 2007, through the date of the ALJ's decision.  (TR 27.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human*

7

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.     Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203

8

F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that her case should be remanded under sentence four for three reasons: (1) the ALJ inappropriately determined that Plaintiff's testimony was not credible with regard to the severity of her symptoms; (2) the ALJ's determination of Plaintiff's RFC did not accurately portrayed Plaintiff's limitations because it did not include a limitation for concentration, persistence, or pace; and (3) the ALJ's determination that Plaintiff's impairments did not meet or equal one of the listed impairments under 20 C.F.R. Pt. 404,

Subpt. P, was not supported by substantial evidence because the ALJ did not address listing 11.09,

Multiple Sclerosis.  (Docket no. 11 at 7-14.)

### 1.    Plaintiff's Credibility

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight

and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor

and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997).  But Credibility

assessments are not insulated from judicial review.  Despite the deference that is due, such a

determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility

determination must contain "specific reasons . . . supported by the evidence in the case record, and

must be sufficiently specific to make clear to the individual and to any subsequent reviewers the

weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR

96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been

considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "The adjudicator may find all,

only some, or none of an individual's allegations to be credible" and may also find the statements

credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by

the objective medical evidence in the record, the Regulations explicitly provide that "we will not

reject your statements about the intensity and persistence of your pain or other symptoms or about

the effect your symptoms have on your ability to work . . . solely because the available objective

medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must

consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of

claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and

side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than

medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found that Plaintiff's subjective complaints were not fully credible. (TR 24).  The ALJ reached this conclusion after reviewing Plaintiff's daily activities, the effect of the Betaseron on her symptoms, and her medical records (for reports of headaches, depression, and the need for a cane).  (TR 25.)

Plaintiff first argues that the ALJ's perspective was skewed with regard to her symptoms because he looked at medical reports from four-and-a-half hears before here date of alleged onset.  (Docket no. 11 at 9.)  In support of this contention, Plaintiff notes that the ALJ looked to Plaintiff's March 2005 physical exam, which showed no evidence of abnormal gait or station.  (*Id.*)  As Defendant argues, however, the date stated by the ALJ appears to be a typo as the exhibit cited by the ALJ is from a March 2010 exam.  (*See* docket no. 13 at 7.)

Second, Plaintiff asserts that the ALJ inappropriately found that Plaintiff's testimony was not credible because she failed to follow her prescribed treatment regimen.  (Docket no. 11 at 9-11.)  In support of this argument, Plaintiff point to where the ALJ's stated, "The evidence of record clearly shows that she is not consistently taking medications for multiple sclerosis.  However, when the claimant takes a full dose of her multiple sclerosis medications, her medical condition significantly improves."  (TR 25.)  Plaintiff's interpretation of this statement is understandable.  Nevertheless,

when read in context, the ALJ did not find that Plaintiff's statements lacked credibility because she failed to follow her prescribed treatment; instead, the ALJ found that Plaintiff's portrayal of the severity of her symptoms was not accurate because when she takes her medication, her symptoms

11

are not as severe.  (*See* TR 24-25.)

Thus, even if the Court disagrees with the ALJ, his determination is supported by the evidence in the record and is sufficiently specific to make clear to Plaintiff and the Court the weight given to Plaintiff's statements and the ALJ's reasons for that weight.  The ALJ could reasonably conclude that Plaintiff's subjective complaints regarding the severity of her symptoms and the impact of those symptoms were not entirely credible.  The ALJ's determinations regarding Plaintiff's credibility are supported by substantial evidence, and therefore, the Court recommends denying Plaintiff's Motion for remand with regard to this issue.

## 2.     Concentration, Persistence, or Pace

Plaintiff argues that despite finding that Plaintiff has "moderate difficulty" with concentration, persistence, or pace, the ALJ did not place any such limitations in the hypothetical questions presented to the VE.  (Docket no. 11 at 11.)  Instead, the ALJ limited the RFC to work involving "simple, routine, and repetitive tasks."  (TR 23.)  Defendant contends that "there is no inconsistency between the ALJ's finding that Plaintiff had 'moderate difficulties' in concentration, persistence, and pace, and her limitation to 'simple, routine, and repetitive' work."  (Docket no. 13 at 13.)  Defendant asserts that Plaintiff "has not . . . demonstrat[ed] that her mental problems were disabling;" "there is no evidence from *any* mental health professional suggesting that Plaintiff could not work at a consistent pace or that she had greater restrictions than the ALJ found," and "there is no opinion from any medical source that Plaintiff's moderate limitation in concentration, persistence, or pace produced any speed- or pace-based restrictions."  (*Id.* at 13, 14.)

As Defendant points out, "there is no requirement that the ALJ use the exact language that a claimant has a moderate limitation in concentration, persistence, or pace directly in the hypothetical question or RFC finding."  (*Id.* at 13.)  Moreover, in Plaintiff's Reply, she states that

"[p]roblems in concentration, as the ALJ determined Plaintiff had, *could* ultimately lead to problems with pacing or detail, as one who is unable to concentrate on the task they are doing *would* necessarily take longer to complete the task . . . due to the inability to focus her attention on the matter at hand." (Docket no. 14 at 4 (emphasis added).) Thus, Plaintiff's argument is entirely speculative and is based on what *could* happen in Plaintiff's case; Plaintiff does not draw the Court's attention to any medically documented evidence indicating an objective limitation in concentration, persistence, or pace that the ALJ should have accounted for in his RFC determination. Thus, even if the Court would have found otherwise, substantial evidence supports the ALJ's decision in this regard. Therefore, the Court recommends denying Plaintiff's Motion for Remand with regard to this issue.

### 3.      Listing Number 11.09, Multiple Sclerosis

At step 3 of the Framework for Social Security Determinations, the ALJ determines whether a claimant's impairment or combination of impairments meets any of the "listed impairments" in 20 C.F.R. § 404 Subpt. P, App. 1. If the ALJ finds that the claimant's impairments meet or equal these listed impairments, the claimant is disabled. *Id.*       Section 11.09 indicates that an individual meets such a listed impairment if they have:

Multiple sclerosis. With:

A. Disorganization of motor function as described in 11.04B; or

B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or

C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

13

20 C.F.R. § 404 Subpt. P, App. 1, Sec. 11.09.

> . . . Paragraph C provides criteria for evaluating the impairment of individuals who do not have muscle weakness or other significant disorganization of motor function at rest, but who do develop muscle weakness on activity as a result of fatigue.

> Use of the criteria in 11.09C is dependent upon (1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and (3) obtaining evidence that the system has actually become fatigued. The evaluation of the magnitude of the impairment must consider the degree of exercise and the severity of the resulting muscle weakness.

*Id., at* Sec. 11.00(E).

Plaintiff contends that she meets with the requirements of Section 11.09(C) because she has been diagnosed with MS and has a history of chronic fatigue, myelopathic quadriparesis, imbalance, and arm pain and weakness. (Docket no. 11 at 14 (citing TR 265, 301, 300, 308, 306, 309).) Defendant argues that "'it is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments.'" (Docket no. 13 at 15 (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990)).) Defendant asserts that the record, as a whole, suggests that Plaintiff cannot satisfy the listing requirement because, at times, her symptoms were reported as "normal," or they improved while she was on the Betaseron. (*Id.* at 16-17.)

Defendant is correct that the Secretary is not required to explain why a claimant does not satisfy every different section of the listing impairments; indeed, such a requirement would be absurd. Nevertheless, the ALJ analyzed Plaintiff's knee impairment under the criteria of Section 1.02 and her mental impairments under Section 12.04. (TR 21-22.) The Court finds the ALJ's omission of any discussion regarding Section 11.09, which relates precisely to the condition with which Plaintiff has been diagnosed, particularly glaring in this matter. As Plaintiff notes, without such a discussion, "it is 'impossible to say that the ALJ's decision at Step Three was supported by

14

Substantial Evidence.'" (Docket no. 11 at 13 (quoting *Reynolds v. Commissioner*, 424 Fed. Appx. 411, 414 (6th Cir. 2011)).)  The ALJ may have found that Plaintiff did not meet the requirements of Section 11.09 for the reasons suggested by Defendant, but the Court will not engage in such speculation.  Therefore, the Court recommends granting Plaintiff's Motion and remanding this matter for purposes of determining whether Plaintiff has a listed impairment under 20 C.F.R. § 404 Subpt. P, App. 1, Sec. 11.09.

## VI.     CONCLUSION

This case should be remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  Because a sentence-four remand is warranted, Plaintiff's Motion to Remand (docket no. 11) should be GRANTED IN PART to determine whether she has a listed impairment under 20 C.F.R. § 404 Subpt. P, App. 1, Sec. 11.09 and DENIED IN PART with respect to her remaining arguments.  And Because the Court recommends granting Plaintiff's Motion in part, Defendant's Motion for Summary Judgment (docket no. 13) should be DENIED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 29, 2013              s/ Mona K. Majzoub
                                     MONA K. MAJZOUB
                                     UNITED STATES MAGISTRATE JUDGE

<u>**PROOF OF SERVICE**</u>

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 29, 2013              s/ Lisa C. Bartlett
                                     Case Manager

16